74 N.J. Super. 474 (1962)
181 A.2d 537
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
E.H. MILLER TRANSPORTATION COMPANY, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 30, 1962.
Decided June 5, 1962.
*476 Before Judges PRICE, GOLDMANN and LEWIS.
Mr. Joseph L. Tramutola, Jr., argued the cause for appellant (Messrs. Toolan, Haney & Romond, attorneys; Mr. Tramutola, of counsel).
Mr. Steven S. Radin, Deputy Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney; Mr. Radin, of counsel).
The opinion of the court was delivered by LEWIS, J.A.D.
Defendant E.H. Miller Transportation Company, Inc., appeals from a conviction for violating the highway weight limitation statute N.J.S.A. 39:3-84 (amendment L. 1961, c. 113, sec. 3, is not here applicable). The substance of defendant's contention is that a conviction under said statute may not be sustained by evidence obtained (1) by public scales located more than two road miles (although within a radius of two miles) from the place of interception, nor (2) by portable scales at a place other than where the vehicle was stopped.
The essential facts are these. On April 26, 1961, at approximately 3:30 P.M., State Trooper Trainor halted defendant's tractor-trailer, driven by one of its employees, while it was traveling eastwardly on the New Jersey Turnpike. The interception took place at the Communipaw interchange in Jersey City. The driver informed the officer that he was transporting 400 bags of coffee weighing 130 pounds each and was destined for the waterfront near the Holland Tunnel entrance to New York. The estimated gross weight was computed by the trooper to be in excess of 60,000 pounds, the registered maximum gross weight capacity of the tractor-trailer. The trooper forthwith escorted the vehicle and its operator to the nearest State certified public scales which were located at 13th and Provost Streets in Jersey City, a distance of 2.7 road miles and less than a two-mile radius (radius estimated to be 1.8 or 1.9 miles) *477 from the point of interception. When it was discovered that the gross weight of the truck exceeded the 81,000 pound certifying capacity of said public scales, Trooper Trainor radioed the Morristown police headquarters requesting portable scales, which were delivered shortly thereafter by State Trooper Saginario. The two troopers proceeded to ascertain the total weight by means of the portable scales.
A consequent "Summons and Complaint" was issued against defendant, charging it with a gross weight of 100,920 pounds  an overweight of 40,920 pounds in excess of the legally allowable weight of 60,000 pounds. At the hearing before the Municipal Court of Jersey City on June 6, 1961, the magistrate disallowed any evidence as to the alleged weight ascertained by the use of the portable equipment, on the theory that such scales were not used at the situs of interception. He amended the complaint to read "a violation of 21,000 pounds overweight" which allegation was based on the difference between the maximum-weight capacity of the public scales (81,000 pounds) and the applicable gross statutory-weight limit (60,000 pounds). Defendant was found guilty as charged by the amended complaint and was fined $630 with $5 costs.
On appeal de novo to the Hudson County Court, the matter was submitted on a stipulation of facts and the oral argument of counsel. The trial judge found defendant guilty of violating N.J.S.A. 39:3-84 and imposed the same penalty as did the magistrate in the proceedings before the municipal court. Defendant appeals from that conviction.
In our review we are called upon to interpret the following statutory provision:
"Any State Police officer or motor vehicle inspector having reason to believe that the size or weight of a vehicle and load is unlawful is authorized to require the driver to stop and submit to a measurement or weighing of the same by means of either portable or stationary scales and may require that such vehicle be driven to the nearest public scales in the event such scales are within 2 miles." (N.J.S.A. 39:3-84.3, first paragraph)
*478 Three distinct types of weight-measuring equipment  portable, stationary and public scales  are recognized by the Legislature in this enactment. The two-mile limit is applicable to public scales; no corresponding restriction is imposed upon the use of scales designated as "portable" or "stationary." The word "such" is a descriptive and relative expression and must be referred to the last antecedent (i.e., "public scales"), unless the meaning of the sentence would thereby be impaired. See Summerman v. Knowles, 33 N.J.L. 202, 205 (Sup. Ct. 1868); 83 C.J.S. Such p. 771; Black's Law Dictionary (4th ed. 1951), p. 1600. There is implicit in this statutory wording an intention to empower the state police officers and motor vehicle inspectors, in their law enforcing capacity, with discretion in the use of any or all of the three various weighing devices, limiting, however, the use of public scales to those within a space or area of two miles from the point of stoppage.
Defendant reads into the legislative phraseology an intendment to measure the mileage limitation by traffic miles. It is urged that the acceptance of "road miles" as a unit of measurement would be consonant with contemporary usage in determining distance relating to vehicular travel. We are directed to the statement in Sproles v. Binford, 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1167, 1182 (1932) that "The use of common experience as a glossary is necessary to meet the practical demands of legislation," and to State v. Russo, 6 N.J. Super. 250, 254 (App. Div. 1950), certif. denied 4 N.J. 456 (1950), for the familiar rule of construction that "the ordinary and popular meaning is to be given to words in a statute, unless it is evident that they are employed in a technical sense." In Russo we further stated, "It must be noted that liberal effect is always given to legislative intent, where possible, and reasonable certainty fulfills the constitutional requirements," citing Annett v. Salsberg, 135 N.J.L. 122 (Sup. Ct. 1947), affirmed 136 N.J.L. 194 (E. & A. 1947).
*479 In State v. Gratale Brothers, Inc., 26 N.J. Super. 581 (App. Div. 1953), an owner of a motor-driven commercial vehicle was convicted as a second offender under N.J.S.A. 39:3-84.3. Judge Goldmann, speaking for this court in that case, discussed the purposes and legislative objective of the subject statute and employed language which is particularly adaptable to the present issues. He said, at page 584:
"We agree with defendant that the statute is penal and quasi-criminal in its nature (State v. Rowe, 116 N.J.L. 48 (Sup. Ct. 1935), affirmed 122 N.J.L. 466 (E. & A. 1939)), and so must be strictly construed (State v. Baker, 3 N.J. Misc. 324 (Com. Pl. 1925), affirmed Ibid. 532 (Sup. Ct. 1925); State v. Perretti, 9 N.J. Super. 97 (App. Div. 1950)). However, the rule of strict construction does not prevent a court from reading the statute in relation to the evil or mischief to be suppressed (State v. Brenner, 132 N.J.L. 607, 611 (E. & A. 1945)), or prevent a court from giving effect to the terms of a statute in accordance with their fair and natural acceptation (State v. Meinken, 10 N.J. 348, 352 (1952)).
The evil or mischief intended to be suppressed by the statute in question was the loading of a vehicle in excess of the weight authorized by the terms of its certificate of registration. What the Legislature clearly had in mind at the time it amended and supplemented R.S. 39:3-84 in 1950 (L. 1950, c. 142), was the protection of our highways and highway structures  subject as they are to the extraordinary use and ever-increasing volume of commercial traffic crossing and recrossing our State  from damage by overweight vehicles. Cf. N.J.S.A. 39:3-84 and 84.4."
The history of our statutes relating to highway weight-limitations clearly indicates the legislative design to protect the roads, highways and people of the State from the hazards and destructive consequences that attend transportation by overweight vehicles. See transcript of public hearing on March 29, 1950 before the Senate Judiciary Committee on Assembly Bill No. 13 which preceded the enactment of L. 1950, c. 142, sec. 5 (N.J.S.A. 39:3-84.3).
The Legislature, in its wisdom, chose the prepositional expression "within 2 miles." If it had intended an admeasuring policy of "road miles," "highway miles," "driving miles," *480 "lineal miles" or any other similar or variant gauge of distance, it could have so provided by explicit words to denote any such intended restriction. The use of the word "within" conveys the idea of "inside of; not without." Webster's New International Dictionary (2d ed. 1961), p. 2941. A County Court decision has characterized the regulation under review as an "arbitrary two-mile radius around public scales." State v. Metropolitan Iron and Steel Co., 62 N.J. Super. 412, 418 (Cty. Ct. 1960). Accordant interpretations have been applied to municipal ordinances by the judiciary in holding, absent clear expression contra, that a restricted area is measurable by a straight line from one point to another regardless of the course followed. Langella v. City of Bayonne, 134 N.J.L. 235, 238 (Sup. Ct. 1946); Vine v. Board of Adjustment of Village of Ridgewood, 136 N.J.L. 416, 418 (Sup. Ct. 1947); Stroll v. State of Texas, 95 Tex. Cr. R. 611, 255 S.W. 620, 30 A.L.R. 1424 (Ct. Crim. App. 1923); Annotation, 30 A.L.R. 1427, 1435-1436. In applying the rule of strict construction to a statute it should be observed: "Its oneness of aim is to effectuate, never to thwart, legislative intention." Whiting v. Inhabitants of Lubec, 121 Me. 121, 115 A. 896, 899 (Sup. Jud. Ct. 1922); McCaffrey, Statutory Construction, sec. 75, p. 150 (1953).
It was admitted in the oral stipulation that the loaded vehicle was taken to the nearest public scales, which were located within a radius of two miles  although beyond two road-miles from the situs of interception. As to the quantum of gross weight, counsel for defendant said:
"My stipulation here is that by whatever process they used that they got the weight on the scale in the excess of eighty thousand pounds. I do not intend to argue the weight on the truck. I don't know what the amount of the weight was. They have never informed me."
The magistrate, as previously noted, excluded the proffered evidence of the weight ascertained by the portable scales *481 and, on appeal to the County Court, that weight was not stipulated and no testimony to establish evidence thereof was offered. The trial before each of these tribunals was predicated upon the amended complaint, which alleged an excess weight of 21,000 pounds, the maximum overweight ascertainable by the public scales.
To hold, as we do, that the declaration "within 2 miles" should be considered to mean within a radius of two miles does not require any judicial extension of language. The design of the Legislature is clear and should not be frustrated by technicalities, semantics or a restrictive interpretation of language. "When the words of a statute are susceptible of two meanings, the one favorable, and the other hostile to its principal design, the former should prevail and control the construction." Lloyd v. Vermeulen, 22 N.J. 200, 205 (1956); State v. Provenzano, 34 N.J. 318, 321 (1961).
Furthermore, it is significant, although we do not rest this opinion thereon, that the operator of the tractor-trailer, defendant's agent, accompanied the State trooper to the public scales without demur or objection. There is no evidence that the driver was required over his protest to drive more than two miles from the place of stoppage. There can be no question of the agency of the driver, since he was in charge of the vehicle.
We also note, incidentally, that the County Court was not bound by the decision of the magistrate to exclude evidence respecting the weight ascertained by the portable scales. The trial de novo nullifies the proceedings before the municipal court. State v. Joas, 34 N.J. 179, 189 (1961). There does not appear to be any valid reason why the proofs as to this weight (portable scales) should not have been offered, admitted into the evidence and the ultimate fine calculated according to the entire overweight thereby established. The court could have taken judicial notice of the fact that the State maintains portable scales and stationary scales which are strategically located throughout the State. *482 The two-mile limitation is not applicable to these scales and the statutory language "stop and submit to a measurement or weighing" does not contemplate the necessity of that accomplishment's being effected at the site of interception (eo instante  eo loci).
To say that a motor vehicle, after being stopped, cannot be remobilized within a reasonable time and for a reasonable distance in order to be weighed by a "portable" or "stationary" scale maintained by the State for use by its law enforcement officers would attribute to the statute an absurd, illogical and impracticable meaning. In State v. Metropolitan Iron and Steel Co., supra, a type of scales not authorized by the statute was employed and the court properly set aside the conviction. We do not, however, adopt the theory and restricted interpretation employed by the County Court in that case to the effect that the weighing process by "portable" or "stationary" scales must take place "at the point of interception."
Defendant's guilt, as charged by the amended complaint, is clear. The record amply supports conviction.
Affirmed.